J-A07022-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DANIEL J. SPELLMAN AND MARGARET SPELLMAN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| BENJAMIN MOORE & CO. | |
| Appellee | No. 1112 WDA 2016 |

Appeal from the Judgment Entered July 1, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at No: GD 11-025063

BEFORE:  OLSON, STABILE, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STABILE, J.:                **FILED JUNE 9, 2017**

Appellants/plaintiffs Daniel J. and Margaret Spellman, husband and wife, appeal from the July 1, 2016 judgment entered in the Court of Common Pleas of Allegheny County ("trial court") against them and in favor of Appellee/defendant Benjamin Moore & Co. ("Benjamin Moore") in this civil action.  Upon review, we affirm.

The facts and procedural history of this case are undisputed.[1] Appellants purchased premium Natura paint ("Natura") manufactured by Benjamin Moore and used it to paint two walls in the family room of their

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Unless otherwise specified, these facts come from the trial court's October 7, 2016 opinion.

home. Thereafter, Appellants detected a foul odor emanating from the painted walls. They eventually contacted Benjamin Moore and it dispatched an employee, Dan Farinelli, to Appellants' home to evaluate and remedy the problem. Mr. Farinelli could not smell any odor in Appellants' home, even though he visited the home on two other occasions in 2010.

Mr. Farinelli wanted to assist Appellants despite the fact that he himself did not detect the fishy smell Appellants described to him. Mr. Farinelli, however, did inform Appellants that the "curing" period for Natura was thirty days and that they might want to wait until the paint cured before taking any further action. Appellants were not amenable to his suggestions.

Mr. Farinelli then suggested painting over and resealing the walls with another product. Appellants also declined to entertain this suggestion. Thereafter, Mr. Farinelli called a chemist at Benjamin Moore who recommended that a mixture of baking soda and water may be applied to the walls to remedy the alleged odor problem. Appellants agreed with this recommendation.

Mr. Farinelli returned to Appellants' home in late January 2010 and applied the mixture to the two walls, despite the fact that he still did not smell the alleged odor. Afterwards, Appellants called Benjamin Moore and complained that the application of the mixture caused the odor to exacerbate and expand into the rest of their home. Not long after, Appellants decided to leave their home permanently. They did nothing

further to address the alleged condition, other than to ventilate the home occasionally.

A few months later, Appellants hired a local company to test the painted drywall as well as the air quality inside of their home for the presence of volatile organic compounds ("VOCs"). The test revealed only trace amounts of VOCs, an amount which proved to be safe. Appellants nevertheless refused to live in the house. They subsequently ordered additional tests, which also revealed that the air in the home was healthy to breathe.

Appellants were not satisfied with the test results from the local companies and sought out a company from Maryland to confirm their claims that their home was unsafe because of Natura. The out-of-state company performed a test, which likewise found the home to contain normal, safe air. Nevertheless, the company prepared a computerized model, which did not actually sample the air, or the Natura paint. The company was unaware of the paint's formula or any of its ingredients. Furthermore, the formula used by the company assumed a toxicity level of January 10, 2010, the day Appellants painted. The model was prepared two and one-half years later. The company's assumption of toxicity level was not based upon fact and the company acknowledged that an unpleasant odor does not equate to the presence of harmful toxins. The home was safe and the paint was harmless.

In 2016, Benjamin Moore retained another testing company to test for VOCs and semi-VOCs. Nothing other than normal amounts found in nature or any home was present in Appellants' home.

Nevertheless, Appellants persisted that they had been harmed by Natura. Mr. Spellman sought no medical attention until more than two and one-half years after painting his walls with Natura. He finally sought medical attention after contracting a case of hives after playing golf. His physician diagnosed hives related to contact dermatitis or the sun. Appellants though claim that the hives were related to inhaling fumes from the paint. Subsequently, the hives disappeared as the result of medical treatment. Mr. Spellman also had a history of suffering from hives, one in particular occurred twenty-two years prior to his painting with Natura and lasted one year.

Later, Mr. Spellman consulted with a Virginia physician, who gave him a checkup and pronounced him normal, except for hives and a rash, and a little swelling in his face and around his mouth. The doctor attributed the symptoms to multiple chemical sensitivities, but could not tell that the sensitivities were associated with Natura or any other source. He also did not know the formulation of Natura paint. Mr. Spellman underwent an independent medical evaluation with an environmental and occupational physician in the course of trial preparation who found that neither husband nor wife had suffered an injury from Natura.

Natura was developed as an environmentally greener alternative to traditional paint and was intended to eliminate as many VOCs as possible to be virtually VOC free. It is formulated to contain odorless compounds. The defoaming agent in Natura was simply canola oil. However, Benjamin Moore received about sixty complaints about the odor out of half a million cans sold. Benjamin Moore investigated and, with the help of their supplier of defoaming agent, the canola oil was found to be the cause of those few complaints. Benjamin Moore's discovery occurred after Appellants had applied the paint to the walls in their family room. Only Appellants could smell it in their own home. The canola oil was removed from Natura as a result of Benjamin Moore's investigation.

Appellants instituted a civil action against Benjamin Moore. On July 7, 2014, Appellants filed an amended complaint, alleging, among other things, causes of action for negligence, negligent misrepresentation, common law fraud, and violations of Section 201-2(4)(v), and (vii) of the Unfair Trade Practices Act and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201–1, *et seq*.[2] Appellants specifically alleged that, on December 4, 2009, they purchased Natura, which Benjamin Moore "manufactures, distributes,

---

[2] To the extent Appellants raise claims under Section 201-2(4)(ii) and (xxi) on appeal, we decline to review them. Appellants failed to assert violations under these subsections of the UTPCPL in their complaint or before the trial court and, as a result, they may not raise violations of these subsections for the first time on appeal. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

markets and sells." Amended Complaint, 7/7/14, at ¶¶ 3-5. Appellants alleged that they were induced into purchasing Natura because Benjamin Moore marketed it "as a premium paint for its eco-friendly features, including that the paint was "ZERO-VOC," and "virtually odorless," and "fast drying." *Id.* at ¶ 4. Appellants further alleged that on December 10, 2010, they painted two walls in the family room in their home with two coats of Natura. *Id.* at ¶ 7. Appellants alleged that the painted walls did not cure properly, remained tacky, and emitted a "fishy or urine smell." *Id.* Because the mixture of baking soda and water worsened the odor, Appellants alleged that they were forced to leave their home and relocate to a nearby motel. *Id.* at ¶ 19. Appellants alleged that they suffered injuries and damages as a result of the odor. *Id.* at ¶¶ 34-37.

Appellants' case ultimately proceeded to a jury trial. The jury heard all of the above as evidence for Appellants. They were asked whether Benjamin Moore fraudulently or negligently misrepresented their product as free of VOCs and virtually odorless and fast drying, and whether Benjamin Moore breached any warranty with regard to Natura. In relevant part, the jury's verdict slip reads as follows:

1. Do you find that [Benjamin Moore] fraudulently misrepresented the paint product used in the home of [Appellants] and harm was factually caused to [Appellants]?

_____     ___X____
YES                 NO

2. Do you find that [Benjamin Moore] breached its warranty concerning the paint product used in the home of [Appellants] and harm was factually caused to [Appellants]?

| | X |
|---|---|
| YES | NO |

3. Do you find that [Benjamin Moore] negligently misrepresented the paint product used in the home of [Appellants] and harm was factually caused to [Appellants]?

| | X |
|---|---|
| YES | NO |

Jury Verdict Slip, 5/24/16. Thus, the jury found in favor of Benjamin Moore. Appellants' UTPCPL claim was submitted to the trial judge, who also found in favor of Benjamin Moore.

Appellants timely filed post-trial motions, which were denied. Appellants appealed to this Court. The trial court directed Appellants to file a Pa.R.A.P. 1925(b) statement of errors complained of appeal. They complied, raising four assertions of error.[3] In response, the trial court issued a Pa.R.A.P. 1925(a) opinion, denying each of Appellants' claims.

On appeal,[4] Appellants raise four issues for our review:

> [I.] Did the trial court err in finding that Appellants did not establish by a fair preponderance of the evidence that [Benjamin Moore] violated the [UTPCPL]?
>
> [II.] With the denial of Appellants' motion for post-trial relief, which included both a request for judgment notwithstanding the verdict and a motion for new trial, did the trial court err in finding Appellants did not establish by a fair preponderance of the evidence the claim of negligent misrepresentation?
>
> [III.] With the denial of Appellants' motion for post-trial relief, which included both a request for judgment notwithstanding the verdict and a motion for new trial, did the trial court err in

---

[3] Appellants' assertions of error challenged only the trial court's legal conclusions.

[4] Appellants do not challenge the trial court's factual findings.

finding that Appellants did not establish by a fair preponderance of the evidence that [Benjamin Moore] was negligent, which was not contradicted by any evidence presented by [Benjamin Moore]?

[IV.] Did the trial court err in granting [Benjamin Moore's] motions *in limine* so as to exclude evidence, testimony and documents as to the California litigation and blog posts associated with Natura paint?

Appellants' Brief at 6 (unnecessary capitalization omitted).

After careful review of the record and relevant case law, we conclude that the trial court accurately and thoroughly addressed the merits of Appellants' issues on appeal. *See* Trial Court Opinion, 10/7/16, at 5-9. Accordingly, we affirm the trial court's July 1, 2016 judgment. We further direct that a copy of the trial court's October 7, 2016 opinion be attached to any future filings in this case.

Judgment affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/9/2017